UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- X Case No.05 CV 2082 (SHS)
MARC ABRAMS, and RUSSELL ABRAMS     : ECF CASE
individually and derivatively on    :
behalf of Swift Boat Film LLC,      :
                                    : COMPLAINT
            Plaintiffs,             :
                                    : Plaintiffs Demand
            vs.                     : a Trial By Jury
                                    :
SWIFT BOAT FILM, LLC, WHITE         :
MOUNTAIN FILMS, LLC, GEORGE         :
BUTLER, WILLIAM SAMUELS, VINCENT    :
A. ROBERTI, PALISADES PICTURES      :
ENTERTAINMENT GROUP FUND            :
MANAGEMENT, INC., PALISADES         :
PICTURES ENTERTAINMENT GROUP, LLC,  :
GOING UPRIVER FUND, LLC, and        :
THINKFILM, LLC,                     :
                                    :
            Defendants.             :
---------------------------------- X

Plaintiffs Marc Abrams and Russell Abrams, by and through their attorneys, McCue Sussmane & Zapfel, P.C., as and for their Complaint against defendants, allege upon information and belief as follows:

## SUMMARY OF ACTION

1. Defendants knowingly made untrue statements of material facts and failed to state material facts in connection with the purchase and sale of securities to plaintiffs in Swift Boat Film, LLC ("Swift Boat"), and in so doing intended to deceive, manipulate, or defraud plaintiffs. Plaintiffs relied on such misrepresentations, and sustained damages as a proximate result thereof.

2.  The private placement memorandum of Swift Boat delivered to plaintiffs (the "Memorandum") stated that Swift Boat was formed to finance, produce and distribute a commercially successful documentary film on the life of U.S. Presidential candidate John Kerry titled *Going Up River: the Long War of John Kerry* (the "Film").

3.  Defendants failed to state to plaintiffs the material facts that Swift Boat was controlled, directly or indirectly by defendants William Samuels, Vincent A. Roberti, Palisades Pictures Entertainment Group Fund Management, Inc., and Palisades Pictures Entertainment Group, LLC, and that such defendants did not intend to produce and distribute a commercially successful film but rather a film intended primarily to influence the 2004 Presidential election in favor of candidate John Kerry.

4. Defendants failed to state to plaintiffs the material fact that rather than producing and distributing a commercially successful documentary film, defendants were engaged in a conspiracy to influence the 2004 presidential election in violation of federal election campaign laws, including but not limited to making and enabling contributions and expenditures in excess of the individual limits prescribed by federal election laws for contributions to the campaign of John Kerry; and organizing a political committee to influence the election

2

without complying with the registration, reporting, contribution and expenditure limits imposed by federal election campaign laws.

5. Defendants failed to state to plaintiffs the exorbitant sums to be paid to defendants from the offering proceeds.

6. In connection with the sale of securities of Swift Boat to plaintiffs, defendants made numerous untrue statements of material facts and failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of the Section 10(b) Securities Exchange Act of 1934 (the "1934 Act"). Defendants' actions also constituted common law fraud and common law negligent misrepresentation.

7.   Plaintiffs also sue derivatively on behalf of Swift Boat for breach of fiduciary duty, waste and self-dealing, and breach of contact.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over this action pursuant to Section 27 of the 1934 Act, 28 U.S.C. §§ 1331 and 1337. The claims asserted herein arise under Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §78j(b) and 78t(a), and Rule l0b-5, 17 C.F.R.§240.10b-5, promulgated thereunder by the Securities and Exchange Commission.

9. Venue is proper in this District pursuant to Section 27 of the 1934 Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1391(b). Many of the acts giving rise to the violations complained of, occurred in this District and each of the defendants resides in this District.

10.   In connection with the wrongs alleged herein, defendants used the instrumentalities of interstate commerce, including the United States mail, interstate wire and telephone facilities.

## THE PARTIES

11.  In April 2004, plaintiff Marc Abrams purchased a $50,000 membership interest in Swift Boat.

12.  In April 2004, plaintiff Russell Abrams purchased a $125,000 membership interest in Swift Boat.

13.   Defendant Swift Boat is a New Hampshire limited liability company with offices at 165 East 80th Street, New York, New York.

14.   Defendant George Butler ("Butler") is the sole manager and a Member of Swift Boat who resides at 165 East 80th Street, New York, New York.  Butler was a producer and director of the Film.

15.  Defendant White Mountain Films, LLC ("WMF") is a New Hampshire limited liability company with offices at 165 East 80th Street, New York, New York which is owned and controlled by

Butler.   WMF directly or indirectly controlled defendant Swift Boat.

16.   Defendant Palisades Pictures Entertainment Group, LLC ("Palisades LLC") is a New York limited liability company with offices at 1410 Broadway, 30th Floor, New York, New York, which directly or indirectly controlled defendant Swift Boat.

17.   Defendant Palisades Pictures Entertainment Group Fund Management Inc. ("Palisades Inc.") is a Delaware corporation with offices at 1410 Broadway, 30th Floor, New York, New York which directly or indirectly controlled defendant Swift Boat.

18.   Defendant William Samuels ("Samuels") is the sole manager of Going Upriver Fund, LLC, a shareholder of Palisades Inc.,  a producer of the Film, and directly or indirectly controlled defendant Swift Boat.  Upon information and belief, Samuels resides in New York, New York.

19.   Defendant Vincent A. Roberti ("Roberti") is an officer of both Palisades Inc. and Palisades LLC, who upon information and belief resides in New York, New York. Roberti was a producer of the Film and directly or indirectly controlled defendant Swift Boat.

20.   Defendants Roberti, Samuels, Palisades Inc. and Palisades LLC are sometimes collectively referred to as the "Palisades Defendants."

21.   Defendants Swift Boat, Butler, WMF and the Palisades Defendants are sometimes collectively referred to as the "Producer Defendants."

22.   Defendant Going Upriver Fund, LLC ("GUF") is a New York limited liability company with offices at 101 East 52nd Street, 9th Floor, New York, New York, 10022 which was formed by the Palisades Defendants to unlawfully funnel contributions to the John Kerry campaign and influence the Presidential election in violation of federal campaign election laws under the guise of providing print and advertising funds for the Film.

23.   Defendant ThinkFilm, LLC ("Think") is a Delaware limited liability company with offices at 155 Avenue of the Americas, 7th Floor, New York, New York 10013 which entered into an agreement with Swift Boat dated July 12, 2004 to distribute the Film (the "Think Distribution Agreement").

<u>Untrue Statements Regarding Production and Distribution of a Commercially Successful Film</u>

24.   Producer Defendants had the authority and, in fact, ability to control the contents of the Memorandum and other statements made to plaintiffs and caused the material misstatements made to plaintiffs. The Producer Defendants were aware that the statements made to plaintiffs were misleading and had the ability and opportunity to prevent such statements or cause the correction thereof, but failed to do so.

25.   Producer Defendants made untrue statements to plaintiffs that the business objective of Swift Boat was to produce and distribute a commercially successful film. The Memorandum states, "The Film's producers are convinced that an award-winning, commercially successful film can be made."

26.   Plaintiffs invested in Swift Boat to earn a profit from the commercial exploitation of the Film.

27.   Producer Defendants failed to disclose to plaintiffs that defendants were engaged in a conspiracy to influence the 2004 Presidential election in favor of candidate John Kerry rather than producing and exploiting a commercial documentary.

28.   Producer Defendants engaged in a conspiracy to violate federal election campaign laws, including but not limited to, making  expenditures in excess of the individual limits on contributions to the Presidential campaign of John Kerry; and organizing a political committee to influence the election without complying with the registration, reporting, contribution and expenditure limits imposed by federal election campaign laws.

29.   Producer Defendants exercised creative control over the content of the Film so that rather than producing a bona fide documentary on the subject which would have journalistic credibility and commercial appeal, Swift Boat produced a totally biased film to support the candidacy of John Kerry.  The Film

7

was produced to further the political aims and other ambitions
of Producer Defendants and to support the John Kerry campaign.
Producer Defendants produced a film that was little more than a
"puff piece" or an "infomercial" for the candidate that had no
commercial appeal.

30.  Prior to Plaintiffs' investment, Swift Boat entered
into oral or written agreements with the Palisades Defendants
granting to Palisades Inc. the right to distribute or control
the distribution of the Film.  Producer Defendants failed to
disclose this material fact to plaintiffs.  The Palisades
Defendants and their role in distribution of the Film are not
mentioned in the Memorandum.  The Memorandum includes the untrue
statement that "Swift Boat does not have any distribution
agreements in place."

31.  Swift Boat received and rejected an offer from a major
motion picture company to distribute the Film which included a
substantial advance to Swift Boat, which alone would have
recouped a substantial portion of the investment in Swift Boat.
The motion picture company additionally offered payment of all
print and advertising costs for the distribution of the Film
provided that the Film would be released in 2005 after the
conclusion of the election to avoid politicizing the release of
the Film.  Swift Boat was forced to reject such offer because it
had previously granted control of distribution to the Palisades

Defendants pursuant to their undisclosed agreement.  The commercial distribution agreement would have required Producer Defendants to relinquish control of distribution of the Film and would have thwarted their goal of influencing the 2004 election. After rejecting the lucrative distribution agreement from an internationally renowned company, Producer Defendants caused Swift Boat to enter into a series of agreements that assured that the Film would not be commercially successful.

32.  On or about July 12, 2004, Producer Defendants caused Swift Boat to enter into the Think Distribution Agreement, which required Swift Boat to pay a $75,000 advance to defendant Think and to pay all print and advertising costs. In lieu of a 2005 international release to maximize the commercial success of the Film with a distributor that would pay a substantial advance and all the print and advertising costs, Swift Boat elected to pay defendant Think to release the Film to support the Kerry campaign.

33.  Plaintiffs offered to arrange $1,000,000 in financing to pay for print and advertising expenses under the Think Distribution Agreement.  Swift Boat rejected such offer because it was bound by the undisclosed agreement it had entered into with the Palisades Defendants prior to April 2004.

34.  In August 2004 Swift Boat entered into a written loan commitment agreement with Palisades Inc. (the "Palisades

Agreement"), which memorialized the right of the Palisades Defendants to control the distribution of the Film.  The Palisades Agreement stated that the Film must be released no later than October 1, 2004.

35.  The Palisades Agreement provided terms that were less favorable than the terms offered by plaintiffs.  It provided that Palisades Inc. would loan Swift Boat $500,000 to fund prints and advertising costs of the Film.  Swift Boat agreed to pay to Palisades Inc. a $125,000 management fee and a royalty of 7.5% of gross receipts from the Film.

36.  Rather than releasing a commercially successful documentary film, the Palisades Defendants organized defendant GUF in August 2004 to provide further funds to foster their conspiracy to influence the election.  GUF is a limited liability company of which Samuels was the sole manager. GUF entered into an agreement with Swift Boat (the "GUF Agreement"), purportedly to provide print and advertising funds for Think to distribute the Film.

37.  The Palisades Defendants convinced investors to make $2,200,000 in Kerry campaign contributions disguised as capital contributions to GUF. Pursuant to the terms of the GUF Agreement, GUF must be repaid $2,200,000 plus 15% before Swift Boat receives any proceeds from distributions of the Film.

38.   The purpose of GUF was to influence the 2004 Presidential election. GUF was a political committee organized to influence the 2004 election without complying with the registration, reporting, and contribution and expenditure limits imposed by federal law.

39.   Rather than attempting to generate box office receipts, defendants used Swift Boat funds to give away over 250,000 tickets at free screenings of the Film at over 1,000 venues.

40.   Defendants worked closely with the political action committee Move-on.org in connection with its efforts to influence the election. Defendants spent considerable sums to promote free screenings and convert undecided voters for John Kerry.  While defendants caused Swift Boat to engage in extensive campaign activities, they did not exercise reasonable business judgment or devote the resources of Swift Boat to the commercial release of the Film.

41.   Defendants caused the Film to be released in states which were deemed "swing" or "battleground" states by the Kerry campaign, in an attempt to influence voters.  Swift Boat focused on "swing states" and ignored the box office potential of heavily Democratic States where the campaign was not tightly contested.

42.   Defendants caused the Film to be released through Think in 163 theaters during the first week of October 2004 without adequate advertising or marketing to support the amount of theaters. The Film earned poor box office revenue and was quickly reduced to 10 theaters by the last week of October with miniscule box office receipts.

43.   Defendants used Swift Boat funds to pay for research and to conduct a focus group to evaluate the Film's impact on undecided voters rather than marketing the commercial release of the Film. In a public solicitation of additional funds for GUF, defendant Roberti stated in a mass e-mail dated October 26, 2004:

> . . .We need to raise an additional $75,000 between now and Thursday.  The good news is that this is not a contribution but an investment in our Going Upriver Fund, LLC which pays a coupon of fifteen (15) points. We know already from our research that we are converting 7 out of every 10 undecided voters when they see this film.
>
> Already this film has contributed immeasurably to John Kerry's candidacy by successfully knocking out the airing of the highly inaccurate and misleading documentary Stolen Honor from Sinclair Network.  If Going Upriver has not been available, Stolen Honor would have been seen unchallenged by over 8 million households in the battleground states.
>
> We need your help today. . .

44.   The extent to which the Palisades Defendants would go to raise funds for the Kerry campaign is evidenced by the fact that defendant Roberti was making a public offering of

securities in GUF and promising a "coupon" of fifteen percent during a week when gross box office receipts for the Film were only a microscopic $5,502 and it was apparent that the return to investors would be zero.

Untrue Statements Regarding Control Persons

45.  Producer Defendants made untrue statements in the Memorandum that Butler "has the exclusive right to manage and control the affairs of Swift Boat. No investors will be permitted to participate in the control of the Company's business, transact any business in the Company's name, or bind the Company in any other way."

46.  Producer Defendants failed to disclose that Swift Boat was controlled, directly or indirectly by the Palisades Defendants.  The Palisades Defendants controlled the operations, expenditures and affairs of Swift Boat and the creative content, marketing, distribution and exploitation of the Film, and caused Swift Boat to engage in a conspiracy to violate federal election campaign laws to influence the 2004 Presidential election rather than producing and distributing a commercially successful documentary film.

47.  Defendant Samuels was actively involved in the organization of Swift Boat and was a promoter of Swift Boat engaged in the solicitation of investors for Swift Boat.

48.   Before plaintiffs invested, Butler was specifically asked whether Samuels was a manager of Swift Boat or exercised any control over the business or affairs of Swift Boat or the production or distribution of the Film.  Butler stated that Samuels had no such roles.

<u>Untrue Statements Regarding Budget and Fees to Defendants</u>

49.   Producer Defendants made untrue statements of facts and failed to state material facts in the Memorandum regarding the compensation that would be paid by Swift Boat to the defendants, including but not limited to the following:

a. Producer Defendants failed to state that over $648,000 would be payable to defendants Butler, WMF, GUF and Palisades Inc.

b. Producer Defendants failed to state that Butler would be paid or reimbursed for (i) a content license fee of $27,500, (ii)  director's fees of $112,118, which were more than double the amount budgeted by Swift Boat, and (iii) fees for still photographs of $20,000. The Memorandum contained the untrue statement that the only compensation Butler would receive would be "compensation for specific services as producer and/or director in connection with the production of the Film, as set forth in the Film's Budget."

c.  Producer Defendants failed to state that WMF would be paid or reimbursed over $439,000, including (i) a

14

license fee of $41,886, (ii) producer fees of $21,000 and
co-producer fees of $112,118 (more than 50% more than the
amount budgeted by Swift Boat), (iii) director of
photography fees of $23,050, (iv) archivist and research
fees of $42,941, (v) post production sound fees of
$60,207,(vi) legal fees of $21,934, and (vii) office rent
of more than double the budgeted amount.

    d.  Producer Defendants failed to state that Swift Boat
would incur expenses to Palisades Defendants of over
$48,000, including (i) a license fee of $25,810, (ii)
commissions in connection with sale of securities of Swift
Boat of $6,000, which payment violated state law
prohibiting payment of commissions in connection with the
sale of securities to persons not registered as broker-
dealers, and (iii) a consulting fee on post-production of
$10,000.

50.  The Memorandum contained the false or misleading
statement that Swift Boat "has determined that the investment of
$1.3 million is necessary to develop, produce, edit and have the
Film ready for distribution by third parties" and that Swift
Boat "believes that the net proceeds of this offering will be
sufficient to satisfy the budget needs to produce the Film."  If
the Memorandum had stated the actual amounts to be paid to
Butler and WMF, it would have been apparent to plaintiffs that

the Swift Boat offering did not provide sufficient funds to complete the Film.  Swift Boat actually incurred over $2,300,000 to produce and edit the Film, in large part due to the excessive sums paid to Butler and WMF.

<u>Derivative Claims</u>

51.  Plaintiffs were members of Swift Boat at the times of the transactions of which plaintiffs complain in Count V through Count IX below.

52.  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

53.  Plaintiffs and their representatives had telephone conferences and meetings with representatives of Swift Boat objecting to certain of the actions taken by Swift Boat which gave rise to the derivative claims set forth in Count V through Count IX.

54.  Plaintiffs' counsel requested in writing that Swift Boat enforce its rights by making the claims against defendants set forth in Count V through Count IX.  Swift Boat declined to enforce such rights.

55.  Plaintiffs fairly and adequately represent the interests of the members of Swift Boat similarly situated in enforcing the rights of Swift Boat.

## COUNT I

### Violation of Section 10(b) of the 1934 Act Against Defendants Swift Boat, Butler, Samuels, Roberti, WMF, Palisades Inc., and Palisades LLC

56.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57.  Plaintiffs relied on the untrue statements and omissions of Producer Defendants in investing in Swift Boat. Plaintiffs would not have made such investment if the Producer Defendants had not made material misstatements and misrepresentations which included (a) defendants' conspiracy to violate federal campaign election laws and lack of intent to produce and exploit a commercially successful film, (b) the identity of the persons who controlled Swift Boat, and (c) the sums payable to defendants from the proceeds of the offering.

58.  Producer Defendants induced plaintiffs to rely on the material misstatements and misrepresentations knowing that such representations were false and in doing so, Producer Defendants intended to deceive, manipulate, or defraud plaintiffs. Producer Defendants knew that plaintiffs would not invest if Producer Defendants disclosed the material facts.

59.  Plaintiffs sustained damages as the proximate result of Producer Defendants' untrue statements and omissions.

60.  At all relevant times, the Producer Defendants, individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct whereby they knowingly and/or recklessly made materially false and misleading statements to induce plaintiffs to invest in Swift Boat.

61.  Defendant Swift Boat is a direct participant in the wrongs complained of herein.  Butler, WMF and the Palisades Defendants are liable as direct participants in and as controlling persons of Swift Boat.  By virtue of their positions of control and authority, Producer Defendants were able to and did, directly or indirectly, control the content of the Memorandum and other statements made to induce plaintiffs to invest in Swift Boat.  Producer Defendants failed to correct those statements in timely fashion once they knew or were reckless in not knowing that those statements were no longer true or accurate.

62.  Producer Defendants were motivated to act as aforesaid for their personal benefit by reason of their ownership of interests in WMF, Swift Boat, GUF, Palisades Inc. and Palisades LLC and to facilitate their political aims and other ambitions. Producer Defendants had actual knowledge of the facts making the material statements false and misleading, or acted with reckless

disregard for the truth in that they failed to ascertain and to disclose such facts, even though same were available to them.

63.  Without knowledge of the true facts concerning Swift Boat and the Film, plaintiffs invested in Swift Boat and have been damaged thereby.

64.  Plaintiffs have incurred a loss of their entire investment.  Their interests in Swift Boat are worthless because Swift Boat reported no income for 2004 and projects no significant income for 2005.  Butler has suggested to plaintiffs and other investors that they can abandon their investments if they wish to deduct their investment as a total loss in 2004.

65.  By virtue of the foregoing, Producer Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

66.  By virtue of the conduct alleged in Count I, the Producer Defendants are liable to the plaintiffs for damages suffered in an amount to be proven at trial, but in no event less than $175,000 plus interest.

**COUNT II**
**Violation of Section 20(a) of the 1934 Act**
**Against Defendants Butler, Samuels, Roberti,**
**WMF, Palisades Inc., and Palisades LLC**

67.  Plaintiffs repeat and reallege each and every allegation contained in the paragraphs 1 through 66 as if fully set forth herein.

68.  This count is asserted against defendants Butler, WMF and the Palisades Defendants and is based upon Section 20(a) of the 1934 Act

69.  Butler, WMF and the Palisades Defendants were controlling persons of Swift Boat within the meaning of Section 20(a) of the 1934 Act.  Such defendants had the power to influence and exercised the same to cause Swift Boat to engage in the illegal conduct and practices complained of herein by causing Swift Boat to disseminate the false and misleading information referred to above.

70.  Butler, WMF and the Palisades Defendants were motivated to act as aforesaid for their personal benefit by reason of their ownership of interests in Swift Boat, GUF, Palisades Inc. and Palisades LLC and to facilitate their ambitions of influencing the Presidential election.  Such defendants had actual knowledge of the facts making the material statements false and misleading, or acted with reckless disregard for the truth in that they failed to ascertain and to

disclose such facts, even though same were available to them.

71.  The positions of Butler, WMF and the Palisades Defendants made them privy to and provided them with actual knowledge of the material facts concealed from the plaintiffs.

72.  Butler, WMF and the Palisades Defendants intended to deceive, manipulate, and defraud plaintiffs.

73.  By virtue of the conduct alleged in Count II, Butler, WMF and the Palisades Defendants are liable for the aforesaid wrongful conduct and are liable to plaintiffs for damages suffered in an amount to be proven at trial, but in no event less than $175,000 plus interest.

### COUNT III
#### Common Law Negligent Misrepresentation
#### Against Defendants Swift Boat, Butler, Samuels,
#### Roberti, WMF, Palisades Inc., and Palisades LLC

74.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 73 as if fully set forth herein.

75.  Producer Defendants acted with carelessness in imparting words by making the material misstatements and misrepresentations to plaintiffs in the Memorandum and in oral statements as set forth in paragraphs 24 through 50 above.

76.  Producer Defendants expected plaintiffs to rely on such misstatements and misrepresentations.

77.  Plaintiffs acted upon the misstatements and misrepresentations of Producer Defendants in investing in Swift Boat, to their damage.

78.  Producer Defendants directed the words directly to plaintiffs, with knowledge that they would be acted upon by plaintiffs.

79.  As the issuer of securities and the persons that controlled the issuer, Producer Defendants were bound to plaintiffs by a relation of duty or care.

80.  Producer Defendants are liable for the aforesaid wrongful conduct and are liable to the plaintiffs for damages suffered in an amount to be proven at trial but in no event less than $175,000, plus interest, plus punitive damages in an amount sufficient to deter future misconduct by Producer Defendants.

**COUNT IV**
**Common Law Fraud**
**Against Defendants Swift Boat, Butler, Samuels,**
**Roberti, WMF, Palisades Inc., and Palisades LLC**

81.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

82.  Producer Defendants made misrepresentations of numerous material facts to plaintiffs, as set forth in paragraphs 24 through 50 above.

83.   Producer Defendants made the misrepresentations intentionally or recklessly in order to deceive plaintiffs.

84.   Plaintiffs justifiably relied on the misrepresentations made by Producer Defendants.

85.   Plaintiffs would not have invested in Swift Boat if Producer Defendants had not made the misrepresentations set forth in paragraphs 24 through 50 above and such misrepresentations caused plaintiffs to lose their entire investment in Swift Boat.

86.   Each of Producer Defendants had knowledge of the existence of the misrepresentations and rendered substantial assistance to the fraud.

87.   Producer Defendants are liable for the aforesaid wrongful conduct and are liable to the plaintiffs for damages suffered in an amount to be proven at trial, but in no event less than $50,000 plus interest, plus punitive damages in an amount sufficient to deter future misconduct by Producer Defendants.

**COUNT V**
**Breach of Fiduciary Duty, Waste and Self-Dealing**
**Derivative Claim on Behalf of Swift Boat**
**Against Butler, Roberti and Samuels**

88.   Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 87 as if fully set forth herein.

89.   Butler was the sole manager of Swift Boat.  Defendants Roberti and Samuels were undisclosed principals of Swift Boat and controlled Swift Boat. Each of Butler, Roberti and Samuels (the "Individual Defendants") owed a fiduciary duty and duty of loyalty to Swift Boat to exercise independent, informed business judgment to produce and distribute a commercially successful documentary Film.

90.   Individual Defendants caused Swift Boat to enter into a series of transactions and engage in business conduct which were not in good faith, involved intentional misconduct, involved a knowing violation of law, and from which they derived improper personal benefit, as is set forth more fully in paragraphs 24 through 50 above, which are incorporated herein by reference and are summarized below.

91.   Individual Defendants were engaged in a conspiracy to take all steps possible to influence the 2004 election in favor of candidate Kerry in violation of federal law, rather than producing and exploiting a commercial documentary.

24

92.   Individual Defendants knowingly failed to fulfill their duties to produce a bona fide documentary which would have journalistic credibility and commercial appeal.

93.   Individual Defendants engaged in self-dealing by causing Swift Boat to enter into oral and/or written agreements with the Palisades Defendants giving such defendants the exclusive right to control distribution of the Film to ensure that the Film would be distributed to influence the election.

94.   Individual Defendants engaged in self-dealing by causing Swift Boat to enter into the written Palisades Agreement on terms that were less favorable to Swift Boat than the terms offered by plaintiffs.

95.   Individual Defendants rejected an offer from a major motion picture company to distribute the Film which included a substantial advance to Swift Boat and funding of all print and advertising costs for the distribution of the Film.  The offer was rejected because it would have required the Individual Defendants to relinquish control of distribution of the Film and required the release of the Film in 2005, frustrating the Individual Defendants' goal of influencing the 2004 election. After rejecting the lucrative distribution agreement, Individual Defendants caused Swift Boat to enter into the Think Distribution Agreement which required Swift Boat to pay a

$75,000 advance to defendant Think, and to pay all print and advertising costs.

96.   Individual Defendants used Swift Boat funds to organize a massive campaign to give away over 250,000 tickets at free screenings of the Film at over 1,000 venues.

97.   Individual Defendants caused Swift Boat to engage in extensive campaign activities while failing to exercise reasonable business judgment and failing to utilize the resources of Swift Boat to support the commercial release of the Film.

98.   The Individual Defendants caused the Film to be released in states which were deemed "swing" or "battleground" states by the Kerry campaign, in an attempt to influence undecided voters.  Swift Boat focused on "swing states" and ignored the box office potential of heavily Democratic states where the campaign was not tightly contested.

99.   The Individual Defendants caused the Film to be released through Think in 163 theaters during the first week of October 2004 without adequate advertising or marketing to support such number of theaters.

100.  The Individual Defendants used Swift Boat funds to pay for research and to conduct a focus group to evaluate the Film's impact on undecided voters rather than marketing the commercial release of the Film.

101. Defendants caused Swift Boat to incur exorbitant, undisclosed fees.

102. Butler was paid or repaid for  license fees and still photograph fees that were not disclosed in the Memorandum and violated the Operating Agreement of Swift Boat (the "Operating Agreement") and the Individual Defendants duties to Swift Boat.

103. Butler was paid  director's fees, producer fees and co-producer fees, which fees were exorbitant, far exceeded the amount budgeted by Swift Boat, were not disclosed in the Memorandum and violated the Operating Agreement and the Individual Defendants duties to Swift Boat.

104.  WMF was paid or repaid license fees, director of photography fees, production sound fees, legal fees and rent, which sums were exorbitant and were not  disclosed in the Memorandum and violated the Operating Agreement and the Individual Defendants duties to Swift Boat.

105.  Palisades Defendants were paid or repaid for a license fee, unlawful commissions in connection with sale of securities of Swift Boat, and a consulting fee on post-production, which sums were exorbitant and not disclosed in the Memorandum and violated the Operating Agreement and the Individual Defendants duties to Swift Boat.

106. Swift Boat incurred $2,300,000 to produce the Film, exceeding the Swift Boat budget by more than $1,000,000, in large part due to the excessive payments paid to defendants.

107.  Upon information and belief, the Individual Defendants caused or permitted GUF to expend vast sums for purposes other than bona fide prints and advertising expenses of the Film, which sums Swift Boat is obligated to repay to GUF.

108. The Individual Defendants engaged in wasteful transactions to advance their own pecuniary interests and personal goals at the expense of Swift Boat and its members, in violation of their fiduciary duties of care and loyalty to Swift Boat and its members.  Such acts further constitute waste and mismanagement, which have caused, and continue to cause, serious injury to Swift Boat.

109.  The Individual Defendants should be ordered to account to Swift Boat for damages as a result of the wrongs committed, and directed to pay to Swift Boat compensatory damages in an amount to be determined at trial, but in no event less than $1,300,000 plus interest, plus punitive damages in an amount sufficient to deter future misconduct by the Individual Defendants.

## COUNT VI
## Breach of Contract
## <u>Against Defendant Butler</u>

110. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 109 as if fully set forth herein.

111. The Operating Agreement provided that Butler, as manager, was permitted to be paid reasonable fees for his services as producer and director in accordance with Swift Boat's budget.

112. Butler breached the Operating Agreement by paying exorbitant and/or unauthorized fees to himself, WMF, and the Palisades Defendants.

113.  Upon information and belief, Butler breached the Operating Agreement by causing or permitting GUF to expend vast sums for purposes other than bona fide prints and advertising expenses of the Film, which sums Swift Boat is obligated to repay to GUF.

114. Butler breached his duties to use his best efforts to manage the business and affairs of Swift Boat.

115. Butler breached the covenant of good faith and fair dealing implied in every contract under New York law.

116. Swift Boat has suffered damages as the result of the breach of contract by Butler in an amount to be proven at trial, but in no event less than $1,300,000.

## COUNT VII
## Breach of Contract
## <u>Against Defendant Think</u>

117. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 116 as if fully set forth herein.

118. The Think Distribution Agreement provides that (a) Think is the exclusive distributor of the Film, (b) Think must use its best efforts to cause the Film to be theatrically released in 20 of the top 35 U.S. markets; (c) Think must use reasonable efforts to maximize Gross Receipts; (d) Think had the right to approve all aspects of marketing and theatrical release of the Film; and (e) Think must comply with all federal campaign elections laws.

119. Think breached its obligations by failing to cause the Film to be released in the required top markets, engaging in a conspiracy to influence the 2004 campaign rather than maximize gross receipts, approving the campaign activities of the other defendants, and failing to comply with federal campaign law.

120. Think breached its obligations by expending or approving expenditure of sums provided by Palisades Inc and GUF for purposes other than bona fide prints and advertising expenses of the Film.

121. Think breached the covenant of good faith and fair dealing implied in every contract under New York law.

122. Swift Boat has suffered damages as the result of the breach of contract by Think in an amount to be proven at trial, but in no event less than $1,300,000.

**COUNT VIII**
**Breach of Contract**
**Against Defendant Palisades Inc.**

123. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

124. Palisades Inc. breached the Palisades Agreement by exercising its right to control the marketing and distribution of the Film to influence the 2004 election rather than distribute a commercially successful film.

125. Upon information and belief, Palisades Inc. caused or permitted GUF and Swift Boat to expend vast sums for purposes other than bona fide prints and advertising expenses of the Film, which sums Swift Boat is obligated to repay to GUF.

126. Palisades Inc. breached the covenant of good faith and fair dealing implied in every contract under New York law.

127. Swift Boat has suffered damages as the result of the breach of contract by Palisades Inc. in an amount to be proven at trial, but in no event less than $1,300,000.

**COUNT IX**
**Breach of Contract**
**<u>Against Defendant GUF</u>**

128. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 127 as if fully set forth herein.

129. Swift Boat and GUF entered into the GUF Agreement pursuant to which GUF was required to provide print and advertising funds for the commercial release of the Film. GUF had a duty to Swift Boat to use its efforts to maximize gross receipts from the Film.

130. GUF breached the GUF Agreement by exercising its right to control the marketing and distribution of the Film to influence the 2004 election rather than distribute a commercially successful film.

131. Upon information and belief, GUF expended vast sums for purposes other than bona fide prints and advertising expenses of the Film, which sums Swift Boat is obligated to repay to GUF.

132. GUF breached the covenant of good faith and fair dealing implied in every contract under New York law.

133. Swift Boat has suffered damages as the result of the breach of contract by GUF in an amount to be proven at trial, but in no event less than $1,300,000.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

a. On Count I, awarding damages to plaintiffs from defendants Swift Boat, Butler, Samuels, Roberti, WMF, Palisades Inc., and Palisades LLC in an amount to be proven at trial, but in no event less than $175,000 plus interest;

b. On Count II, awarding damages to plaintiffs from defendants Butler, Samuels, Roberti, WMF, Palisades Inc., and Palisades LLC in an amount to be proven at trial, but in no event less than $175,000 plus interest;

c. On Count III, awarding damages to plaintiffs from defendants Swift Boat, Butler, Samuels, Roberti, WMF, Palisades Inc., and Palisades LLC in an amount to be proven at trial, but in no event less than $175,000 plus interest, plus punitive damages in an amount sufficient to deter future misconduct by defendants;

d. On Count IV, awarding damages to plaintiffs from defendants Swift Boat, Butler, Samuels, Roberti, WMF, Palisades Inc., and Palisades LLC in an amount to be proven at trial, but in no event less than $175,000 plus interest, plus punitive damages in an amount sufficient to deter future misconduct by defendants;

e. On Count V, ordering the Individual Defendants to account to Swift Boat and awarding damages to Swift Boat from the Individual Defendants in an amount to be determined at trial, but in no event less than $1,300,000 plus interest, plus punitive damages in an amount sufficient to deter future misconduct by defendants.

f. On Count VI, awarding damages to Swift Boat from defendant Butler in an amount to be determined at trial, but in no event less than $1,300,000 plus interest.

g. On Count VII, awarding damages to Swift Boat from defendant Think in an amount to be determined at trial, but in no event less than $1,300,000 plus interest.

h. On Count VIII, awarding damages to Swift Boat from defendant Palisades Inc. in an amount to be determined at trial, but in no event less than $1,300,000 plus interest.

i. On Count IX, awarding damages to Swift Boat from defendant GUF in an amount to be determined at trial, but in no event less than $1,300,000 plus interest.

j.   Awarding such other relief as this Court deems just and proper.

Dated: New York, New York
       February 7, 2005

                              McCue Sussmane & Zapfel, P.C.


                              By:____/S/_____
                              Kenneth Sussmane (KS 9301)
                              521 Fifth Avenue, 28th Floor
                              New York, New York  10175
                              212-931-5500
                              ksussmane@mszpc.com